# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHARLES D. COPELAND, JR.,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | CAUSE NO.: 2:17-CV-140-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Charles D. Copeland, Jr. on March 29, 2017, and on an Opening Brief [DE 16], filed by Plaintiff on September 11, 2017. Plaintiff requests that the Court reverse the June 11, 2015 decision of the Administrative Law Judge denying him disability insurance benefits and either award benefits or remand for a new hearing. For the following reasons, the Court grants Plaintiff's request for remand for a new hearing.

## PROCEDURAL BACKGROUND

On June 17, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability. Plaintiff has amended his alleged onset date of disability to June 10, 2013. The claim was denied initially and on reconsideration. On May 29, 2015, a hearing was held before Administrative Law Judge ("ALJ") Laurie Wardell. Present at the hearing were Plaintiff, his attorney, and an impartial vocational expert. The ALJ issued a written decision on June 11, 2015, concluding that Plaintiff was not disabled based on the following findings:

    1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

    2.     The claimant has not engaged in substantial gainful activity since June 10, 2013, the amended alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; status post lumbar fusion; history of left shoulder surgery; calcaneal spurs to the feet; obesity; and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes or scaffolds or more than occasionally climb ramps and stairs, kneel, stoop, crouch or crawl. He can balance on even and dry surfaces but not on wet or uneven surfaces. He can have no exposure to vibration or hazards such as unprotected heights or dangerous, moving mechanical parts. The claimant is limited to simple, routine tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1970] and was 43 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2013, the amended alleged onset date of disability[,] through the date of this decision.

(AR 28-39).

Plaintiff then sought review before the Agency's Appeals Council, which denied his request on January 23, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. In denying Plaintiff's request, the Appeals Council determined that new evidence submitted to it was not relevant to the time period at issue in the ALJ's decision. On March 29, 2017, Plaintiff filed the Complaint in this case.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

4

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

[his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's treating physicians, inadequately considered Plaintiff's obesity, and erroneously determined Plaintiff's subjective symptoms and further argues that the Appeals Council erred in considering new evidence submitted to it not related to the time period covered by the ALJ's decision.

### A. Treating Physician Opinions

Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give controlling weight to the opinion of a treating physician, she must weigh the opinion in accordance with the factors in 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006).

Plaintiff asserts error in the ALJ's assignment of "little weight" to the medical source statements of Dr. Phillips and Dr. Frampton, who were Plaintiff's treating orthopedic spine surgeon and treating psychiatrist, respectively.

*1. Dr. Phillips*

Dr. Phillips opined that Plaintiff could sit for about 3 hours and stand and walk for less than 1 hour in an 8-hour work day. (AR 641). The ALJ explained that she assigned little weight to Dr. Phillips's opinion "as it is inconsistent with Dr. Phillips' own treatment records." (AR 35). The first purportedly inconsistent record that the ALJ discusses is a letter written by Dr. Phillips June 6, 2013. In that letter, Dr. Phillips wrote that Plaintiff could return to work on October 7, 2013, and could neither lift over 20 pounds nor sit for prolonged periods. Dr. Phillips wrote this letter four days before Plaintiff had lumbar fusion surgery on June 10, 2013. Dr. Phillips indicated that the anticipated surgery and subsequent period of healing were the reasons why Plaintiff could not return to work immediately. This letter, which, prior to surgery, anticipated a four-month recovery period, is not inconsistent with the later medical opinion that Plaintiff was more restricted in his ability to work after the recovery did not take the expected course. Dr. Phillips did not state on or after October 7, 2013, that, on October 7, 2013, Plaintiff was able to work or lift 20 pounds.

The ALJ also cited other records of Dr. Phillips's treatment of Plaintiff. The ALJ highlights that, on September 26, 2013, Dr. Phillips noted that Plaintiff was "mostly limited by apprehension" and had intact lower extremity motor testing. (AR 608). Plaintiff told Dr. Phillips that he had limited his movement out of fear of disturbing the fusion. The ALJ ignored notes from the same visit that indicate that Plaintiff was still having significant back pain and had a limited range of motion and that Dr. Phillips planned for Plaintiff to start a lumbar therapy program. The ALJ also refers to the

7

notes from a January 23, 2014 office visit and the indication that Plaintiff had been doing "reasonably well" but then had a flare of right sided low back pain the previous week during physical therapy. The ALJ neglected to include that, at the same examination, Plaintiff was leaned over and flexed forward because of pain, had significant lumbar spasms, and had markedly limited range of motion. (AR 776). The ALJ did not specifically indicate in what respects she considered these records inconsistent with Dr. Phillips's medical opinion. The level of pain indicated in the treatment notes appears to be consistent with the limitations in the doctor's opinion. Without a clearer explanation from the ALJ, the Court does not perceive inconsistencies between the medical records cited and the medical opinion.

The ALJ also identified purported inconsistencies between the opined lifting restrictions of less than 5 pounds frequently and 5 pounds occasionally and Plaintiff's testimony that he could lift a gallon of milk and his 9-month-old child. Plaintiff's testimony, however, reveals restrictions in these activities. Plaintiff testified, "I can grab a gallon of milk at times if it's with my left arm. I've tried to pour milk with my left arm and dropped the milk jug and it splattered all over the ground." (AR 73). Further, the following exchange occurred during the administrative hearing:

> Q     Are you able to help out with your son, your little nine-month-old-son? Can you hold him?
> A     I – if – if I'm laying down he comes and lays next to me quite a bit.
> Q     Can you pick him up?
> A     Sometimes.
> Q     Okay.
> A     But not for long periods.

(AR 74). Later, Plaintiff clarified both his ability to lift a milk jug and his son. Plaintiff's pain increases when lifting a gallon of milk, and regarding his son:

> A     Well, he sits on my lap and tries to squirm around on me and sometimes I pick him up with both arms in very limited amounts.

| | |
|---|---|
| Q | Are you – are you trying to hold him against your body? |
| A | Yes. |
| Q | Or is – is he standing on your legs at this point or – |
| A | Holding him. |
| Q | – when you say picking him up? |
| A | Holding him. |
| Q | Okay. Without – and you're only supporting him with your arms? |
| A | Yeah. |
| Q | While sitting? You're saying – |
| A | In a sitting or laying position or a reclined position. |
| Q | And how often are you able to do that? |
| A | Every time I pick him up it causes a lot of pain. My wife doesn't allow me to hold him a lot. |
| Q | Why doesn't she allow you? |
| A | She's afraid I'm going to drop him. |
| Q | But you are not walking around carrying him? This is you're sitting or reclining – |
| A | Yes. |
| Q | – when you're lifting? So, you're not on your feet? Okay. And can you tell us about how long you think you can hold the child before you have to support him? When you're holding him, are you holding him out from your body? |
| A | No. |
| Q | Or against your chest? |
| A | Against me. |

(AR 82-83). The testimony suggests that Plaintiff runs the risk of dropping the gallon of milk or his son when lifting either of them. Without further explanation by the ALJ, Dr. Phillips's opinion regarding Plaintiff's ability to lift and carry various weights appears supported by this testimony, not rendered inconsistent.

Finally, the ALJ noted that on August 16, 2013, Plaintiff saw his doctor for possible poison ivy and indicated that he had been in the woods the previous day. The record cited by the ALJ is silent as to Plaintiff's level of activity in the woods. Though the ALJ infers that Plaintiff must have been active in the woods, it is just as consistent to infer that Plaintiff was in a motorized cart in the

woods as to infer that Plaintiff was climbing trees or hiking trails. Being in the woods is not inconsistent with Dr. Phillips's medical opinion.

Accordingly, the ALJ did not adequately explain her decision to not afford controlling weight to Dr. Phillips's medical opinion according to the treating physician rule. Remand is necessary.

2.   *Dr. Frampton*

Dr. Frampton opined that Plaintiff had poor to no ability to maintain concentration, to relate predictably in social situations, and to relate to co-workers and supervisors. The ALJ assigned little weight to Dr. Frampton's opinion, finding that the opinion is inconsistent with the evidence of record. The ALJ cites the following evidence in declining to give controlling weight to Dr. Frampton's opinion. Plaintiff testified that his anxiety is not triggered by being around others. Treatment records indicate that Plaintiff was focused and had only mildly impaired judgment. Plaintiff was able to recall 3 out of 3 objects immediately and after 5 minutes. At a visit at a neurology and pain management center, Plaintiff was described as cooperative and well oriented to time, place, and person with no mood swings, and his higher functions were grossly normal. (AR 726).

The ALJ has again failed to clarify how all of the cited records are inconsistent with the opinion of Dr. Frampton. The ALJ questioned Plaintiff regarding his anxiety, specifically asking whether it is social anxiety. After the ALJ clarified the question for Plaintiff by providing her own definition of social anxiety, Plaintiff testified that he did not believe that he had it. (AR 68). However, Dr. Frampton opined that Plaintiff's anxiety is severe but did not describe it as social

anxiety. (AR 645). Plaintiff's lay opinion based on the ALJ's definition of social anxiety is not inconsistent with Dr. Frampton's opinion of severe anxiety not specified as social anxiety.

The same records that refer to Plaintiff as focused with mildly impaired judgment also describe him as being depressed with intermittent anxiety and constricted affect. (AR 657). ALJs are not permitted to cherry-pick from the record only the evidence that supports their decisions. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (holding that the ALJ's "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal"). On remand, the ALJ is directed to explain any inconsistencies she uses as a basis to deny controlling weight to treating medical opinions and to avoid cherry-picking the evidence.

### B. Obesity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence

11

includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The ALJ found Plaintiff's obesity to be a severe impairment. Plaintiff disputes the sufficiency of the ALJ's consideration of this obesity in conjunction with Plaintiff's other impairments in crafting his RFC, and Plaintiff argues that the ALJ failed to comply with the requirements of Social Security Ruling 02-1p in addressing the limiting effects of this obesity.

Plaintiff argues that the ALJ's explicit statement that Plaintiff's obesity "was considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems listing as required by the Ruling," (AR 29), is insufficient, as it lacks specific analysis. This statement was made in determining whether Plaintiff met a listing, and not in determining Plaintiff's RFC. Social Security Ruling 02-1p requires an ALJ, in formulating the RFC, to consider the exacerbating effects of obesity on underlying conditions even if, unlike the situation here, the obesity itself is not a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008). Though Plaintiff asserts that "it is clear the state agency opinion . . . failed to consider obesity," (Opening Br. 20, ECF No. 16), the Court sees no such clarity in the record. The state agency opinion records include Plaintiff's height and weight, from which Plaintiff's obesity can be readily determined. (AR 110).

The ALJ used this opinion in determining Plaintiff's RFC. Plaintiff does not clarify how it is clear that the state agency opinion was not made in contemplation of Plaintiff's obesity. There is no independent basis for remand here.

## C. Subjective Symptoms

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptoms. On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's decision in this case is governed by the standard of SSR 96-7p. *See* Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017) (clarifying that Social Security Ruling 16-3p only applies when ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date).

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotation marks omitted) (quoting *Skarbek v Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living, neglected to consider side effects of Plaintiff's medicines, and failed to credit Plaintiff for his long history of seeking medical treatment for his pain and other symptoms.

Because remand is necessary on other grounds and new regulations regarding allegations of subjective symptoms will apply on remand, a full analysis of the ALJ's credibility assessment is not warranted. When determining Plaintiff's subjective symptoms on remand, the Court directs the ALJ to be mindful of the warning frequently issued by the Seventh Circuit Court of Appeals to recognize the differences between performing tasks at home in a flexible environment and performing work full-time up to an employer's standards. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ is further instructed to neither ignore nor cherry-pick the evidence of record. *Scrogham*, 765 F.3d at 699; *Golembiewski*, 322 F.3d at 917 (citing *Dixon*, 270 F.3d at 1176; *Zurawski*, 245 F.3d

14

at 888) ("Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."); *see also Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

### D. New and Material Evidence

In describing cases subject to Appeals Council review, the Social Security Regulations that were in effect at the time the Appeals Council made its decision provided that:

> [I]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.

20 C.F.R. § 404.970(b) (1987) (amended 2016). If the newly submitted evidence is new, material, and time-relevant, "the Appeals Council shall incorporate that evidence into the administrative record and shall then evaluate that record, including the new and material evidence." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015) (internal quotation marks omitted) (quoting 20 C.F.R. § 404.970(b)). The Appeals Council will then grant de novo review of the ALJ's decision if it determines that, based on the record as supplemented, the ALJ's conclusions are contrary to the weight of the evidence. *Id.* If the Appeals Council determines that the evidence is "non-qualifying"—that is, not new, material, and time-relevant—then the Court has the ability to review for legal error the conclusion that the evidence is non-qualifying. *Id.* at 722 (citing *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012); *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)).

Here, the evidence in question is the medical record of an EMG of Plaintiff's cervical spine. The Appeals Council determined that the evidence, dated July 21, 2015, to July 27, 2015, "does not affect the decision about whether you were disabled beginning on or before June 11, 2015," which

15

is the date of the ALJ's decision and the date through which the ALJ determined that Plaintiff is not disabled. (AR 2). Defendant asserts that the determination is correct because the evidence post-dates the decision.

In *Farrell*, the Seventh Circuit Court of Appeals found that a confirmed diagnosis in December 2008 related to the period on or before the date of the ALJ's decision, which was issued the month prior. 692 F. 3d at 771. The time elapsed in *Farrell* is more alike to the time elapsed in the present case than the gap in *Schmidt*, the case cited by Defendant. 395 F. 3d at 742. In *Schmidt*, more than two years passed between the issuance of the ALJ's decision and the medical records at issue. *Id.* Plaintiff represents that there was no intervening trauma, such as a motor vehicle accident, that would have created a significant change in Plaintiff's cervical spine from the date of the ALJ's decision to the date the EMG was performed.

The Court agrees with Plaintiff. As seen in *Farrell*, the fact that medical records post-date the ALJ decision does not *de facto* render the medical records irrelevant to Plaintiff's medical condition on or before the date of the ALJ's decision.

The Court has already determined that the case must be remanded for a new hearing and ALJ decision. Accordingly, further discussion of what should have occurred at the Appeals Council level of the administrative process is unnecessary.

**E. Request for Award of Benefits**

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415

(7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in the Opening Brief [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 1st day of June, 2018.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT
